Original
No. 93-640

PETITION OF RICHARD A. ABBOTT
(New Hampshire Department of Labor)

February 8, 1995

*Goodnow, Arwe, Ayer, Prigge & Hoppock, P.C.*, of Keene (*Timothy M. Frazier* on the brief and orally), for the petitioner.

*Roussos, Hage & Hodes, P.A.*, of Manchester (*John B. FitzGerald, III* and *Edward F. Patch* on the brief, and *Mr.*

*FitzGerald* orally), for Monadnock Fabricators, Inc. and Wausau Insurance Company.

HORTON, J. The petitioner, Richard A. Abbott, seeks a writ of certiorari to review the decision of the New Hampshire Department of Labor ("department of labor") denying his claim for a permanent partial impairment award. We affirm.

In 1988, the petitioner sustained a back injury while working for Monadnock Fabricators, Inc. He received medical and wage benefits under workers' compensation. In 1993, the petitioner's treating orthopedic surgeon found that the petitioner had reached a medical endpoint, and noted an eight-percent permanent impairment based on a soft-tissue spinal injury. The petitioner then filed a claim for a permanent partial impairment award in addition to the medical and wage benefits he had received. The department of labor denied his claim, finding that the permanent impairment awards statute, RSA 281-A:32 (Supp. 1994), expressly excluded his soft-tissue spinal injury.

The petitioner has taken the correct appeal path. Until January 1, 1994, permanent impairment awards of the labor commissioner were final, and the appropriate remedy for a dispute was certiorari. *See* RSA 281-A:32, XII (Supp. 1993) (effective until Jan. 1, 1994); *but see* Laws 1993, ch. 226 (effective Jan. 1, 1994). On certiorari, this court will not make *de novo* findings or reverse those reasonably made by the commissioner. *Petition of Markievitz*, 135 N.H. 455, 456, 606 A.2d 800, 801 (1992). The sole inquiry is "whether the commission[er] has acted illegally in respect to jurisdiction, authority or observance of the law, thereby arriving at a conclusion which could not legally or reasonably be made." *Id.* (quotation omitted).

On appeal, the petitioner advances the following arguments: (1) the exclusion of certain soft-tissue spinal injuries from a scheduled award under RSA 281-A:32, IX violates the New Hampshire Constitution, part I, articles 2 and 12 (equal protection) and 14 (guaranteed remedy); (2) the exclusion violates the fourteenth amendment of the United States Constitution (equal protection); (3) the department of labor committed an error of law, abused its discretion and acted arbitrarily and unreasonably in denying his claim for permanent partial disability benefits; and (4) he is entitled to attorney's fees if he prevails.

Workers' compensation law in New Hampshire essentially provides two types of benefits, disability benefits and permanent impairment awards. Disability benefits compensate an injured worker for medical care and lost wages, while permanent impairment awards, otherwise known as scheduled awards, compensate an injured worker for the permanent impairment or loss of use of one or more body parts listed under RSA 281-A:32. *See Ranger v. N.H. Youth Dev. Center*, 117 N.H.

648, 650–51, 377 A.2d 132, 134 (1977). These benefits are "in addition to and wholly independent of [each] other," and an injured worker may receive both. *Id.* at 651, 377 A.2d at 134.

 Prior to 1989, workers' compensation law provided no permanent impairment awards for injuries to the spine alone. RSA 281:26 (1987) (repealed); RSA 281-A:32, IX (Supp. 1988). Spinal injuries were indirectly compensable, however, when manifested in one of the extremities for which an award was scheduled. *See, e.g., Petition of Blackford,* 138 N.H. 132, 635 A.2d 501 (1993). In 1989, the legislature amended RSA 281-A:32, IX to add a scheduled award for *certain* permanent spinal disabilities:

> IX. More than one permanent loss. If an injury results in more than one permanent bodily loss specified in paragraphs I–VIII, *or if the injury is to the spinal column or the spinal cord,* an award shall be made on the basis of a maximum of 350 weeks with the appropriate number of weeks to be determined in proportion to the maximum in accordance with the percent of the whole person specified for such bodily losses in the most recent edition of "Guides to the Evaluation of Permanent Impairment" published by the American Medical Association. *Injury to the spinal column or spinal cord shall not be construed to permit an award under this section as a result of soft tissue injury, nor to permit such an award on the basis of more than one permanent loss, unless such injury results in loss of use of upper or lower extremities.*

RSA 281-A:32, IX (Supp. 1994) (amended by Laws 1989, 294:4, eff. July 1, 1989) (emphasis on 1989 additions). The statute expressly excludes soft-tissue spinal injuries which do not result in loss of use of the extremities. *See id.* The department of labor found the petitioner's injury to be within this exclusion.

The amendment applies to claims arising on or after July 1, 1989. Laws 1989, 294:4. The right to a permanent impairment award attaches at the date of medical disclosure of the permanent nature of the loss, not at the date of the injury. *See Petition of Markievitz,* 135 N.H. at 457–58, 606 A.2d at 802. The petitioner's injury occurred in 1988, but because his *claim* for a permanent impairment award arose in 1993, after the amendment's effective date, he is entitled to the additional award if his injury is found to be scheduled under RSA 281-A:32. *See Petition of Markievitz,* 135 N.H. at 457–58, 606 A.2d at 802.

 The petitioner argues that RSA 281-A:32, IX, as amended, violates the guaranteed remedy and equal protection provisions of the

New Hampshire Constitution, part I, articles 2, 12, and 14, and the equal protection guarantee of the fourteenth amendment to the United States Constitution. Given the remedial nature of workers' compensation laws, all reasonable doubts in the construction of the workers' compensation statutes will be liberally construed in a manner that favors the injured employee. *See Petition of Correia*, 128 N.H. 717, 721, 519 A.2d 263, 266 (1986).

The petitioner states that the amendment to RSA 281-A:32 unconstitutionally denies him an adequate remedy for his injury. We disagree. The New Hampshire Constitution guarantees every citizen "a certain remedy, by having recourse to the laws, for all injuries he may receive in his person, property, or character . . . conformably to the laws." N.H. CONST. pt. I, art. 14. Conformably to the laws means the effective statutory and common law, and part 1, article 14 does not preclude the creation of new causes of action or the abolition of old ones to obtain permissible legislative objectives. *See Opinion of the Justices*, 113 N.H. 205, 210, 304 A.2d 881, 885 (1973). We have recognized, for example, that the legislature may, in its sound discretion, periodically alter the permanent impairment award for a scheduled injury, and that, therefore, the award should be based upon the benefit schedule in effect when the worker's right to compensation for a permanent loss accrued. *See Petition of Lapinski*, 126 N.H. 772, 777, 497 A.2d 841, 844–45 (1985).

■ The right to recover for one's injuries is an "important substantive right" under the New Hampshire Constitution. *Carson v. Maurer*, 120 N.H. 925, 931–32, 424 A.2d 825, 830 (1980). The complete abolition of the rights of a class of persons to recover damages for their injuries would contravene the plain language of part I, article 14 of the New Hampshire Constitution, *"in the absence of provision of a satisfactory substitute." Id.* at 943, 424 A.2d at 838 (quotation omitted).

■■ Employees covered by workers' compensation are conclusively presumed to have waived common law rights against their employers in return for the protection and benefits of the statutes. RSA 281-A:8 (Supp. 1994). Workers' compensation schemes satisfy the guaranteed remedy provision of the New Hampshire Constitution if they provide a *quid pro quo* or an adequate substitute for statutory or common law rights extinguished under the statutes: "In recognition of the burdens, delays, inadequate relief and unequal operation of law inherent in common law remedies, the Workers' Compensation Law was designed to substitute for unsatisfactory common law remedies in tort a liability without fault with limited compensation capable of ready and early determination." *Thompson v. Forest*, 136 N.H. 215, 217, 614 A.2d 1064, 1066 (1992) (quotation omitted). The legislature does not have to

increase workers' compensation benefits whenever it takes away statutory or common law rights so long as the deprivation of rights serves to restore the general *quid pro quo* of the workers' compensation law. *Young v. Prevue Products, Inc.*, 130 N.H. 84, 88, 534 A.2d 714, 717 (1987).

In evaluating whether the relinquishment of the right to a remedy has been adequately offset by workers' compensation benefits, we consider the totality of benefits, not just those received at the time the right was statutorily abridged. *Thompson*, 136 N.H. at 217–18, 614 A.2d at 1067. Workers' compensation laws provide medical and wage benefits for work-related injuries like that of the petitioner. RSA 281-A:31 (Supp. 1994). The amendment simply provides an additional benefit for certain work-related spinal injuries, but it does not abolish or abridge any existing right, remedy, or benefit. *See* RSA 281-A:32. Moreover, the permanent impairment award the petitioner seeks is "in addition to and wholly independent of other [workers' compensation] benefits," *Ranger*, 117 N.H. at 651, 377 A.2d at 134. We have held that an award request for permanent loss of brain function (soft tissue) was properly denied by the department of labor because "the brain is not a scheduled body part under the statute." *Petition of Blackford*, 138 N.H. at 134, 635 A.2d at 502. It appears to us that the petitioner's argument would require a scheduled award for every permanent impairment. The legislature did not intend such a result. Even whole person impairments merit permanent impairment awards only to the extent they result in the loss of use of one or more scheduled body parts. *Id.* at 135, 635 A.2d at 503.

We turn next to the petitioner's claim that the amendment denies workers who have suffered disabling, soft-tissue spinal injuries the equal protection guaranteed by the New Hampshire Constitution, part I, articles 2 and 12 and by the fourteenth amendment of the United States Constitution. We will review this claim under the New Hampshire Constitution, *LeClair v. LeClair*, 137 N.H. 213, 221–22, 624 A.2d 1350, 1355 (1993), because the Federal Constitution offers no greater protection under its equal protection provisions. *Carson*, 120 N.H. at 931–32, 424 A.2d at 830–31; *see also Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 440-42 (1985). We turn to federal case law only as an aid to our analysis. *See State v. Ball*, 124 N.H. 226, 232, 471 A.2d 347, 351 (1983).

■ "The first question in an equal protection analysis is whether the State action in question treats similarly situated persons differently." *LeClair*, 137 N.H. at 222, 624 A.2d at 1355 (quotation omitted). The statute confers an additional benefit on workers suffering osseous spinal injuries that are not afforded to workers suffering soft-tissue spinal injuries. *See* RSA 281-A:32. We have held

that "[t]he equal protection guarantee extends to the State's granting of privileges as well as to its imposition of restrictions. Equality of benefit is no less required than equality of burden." *Park v. Rockwell Int'l Corp.*, 121 N.H. 894, 899, 436 A.2d 1136, 1139 (1981) (quotations omitted).

 The issue is whether this difference in treatment by RSA 281-A:32, IX is constitutionally permissible. The equal protection guarantee of the New Hampshire Constitution part I, articles 2 and 12 does not forbid classifications, but requires us to examine the rights affected and the purpose and scope of the classification. The appropriate standard of review depends upon the rights affected. *See Petition of State Employees' Assoc. & Goulette*, 129 N.H. 536, 540, 529 A.2d 968, 971 (1987). The petitioner urges us to examine the amendment under the substantial relation test set forth in *Carson*, 120 N.H. at 931–32, 424 A.2d at 830–31. We decline to do so.

 We have examined the nature of the classification at issue and the rights affected and conclude that the rational basis test should be applied to this classification. *See Arsenault v. Abbott Furniture Corp.*, 122 N.H. 521, 522, 446 A.2d 1174, 1175 (1982). In *Arsenault*, the plaintiff with a thumb injury claimed that RSA 281:26 (Supp. 1981), the predecessor statute governing permanent impairment awards, denied him equal protection because those who suffer injury to two or more digits are able to recover for loss of function of the entire hand, whereas those who suffer injury to the thumb alone can recover only for impairment to the thumb. *Id.* at 522, 446 A.2d at 1175. We held that the permanent impairment awards statute did

> not abridge a fundamental constitutional right, adversely affect a suspect class, or affect a right that we find "sufficiently important to require . . . a more rigorous judicial scrutiny" than the rational relation test. Our inquiry is whether the classification created by [the predecessor statute] is rationally related to the object of the legislation.

*Id.* (citations omitted). The petitioner has claimed no more than an economic harm in being denied a scheduled award in addition to medical and wage benefits. "[L]egislation merely regulating economic benefits and burdens, with no other significant feature, is reviewable under the rational basis criterion when challenged under the equal protection clause for allegedly producing disparate treatment, or under the due process clause on the ground that even its impartial application is invalid." *Appeal of Bosselait*, 130 N.H. 604, 613, 547 A.2d 682, 690 (1988), *cert. denied*, 488 U.S. 1011 (1989).

██ Our inquiry, therefore, is whether the classification created by RSA 281-A:32, IX is rationally related to the object of the legislation, the reform of workers' compensation law. Our review of the legislative history shows that the legislature excluded soft-tissue spinal injuries not manifested in loss of use of the extremities because: (1) such injuries had never been covered by the awards schedule, either directly or indirectly; (2) bruises and muscle pulls or strains were, at the time, deemed inappropriate for permanent impairment awards; and (3) the reform had to be achieved without unduly raising employers' costs, which meant some limitation on any additional coverage could be expected. *See generally* Relative to Workers['] Compensation Law: Hearing on H.B. 681-FN Before the Senate Insurance Comm. (Apr. 20, 1989); An Act Relative to Workers' Compensation: Hearing on H.B. 681-FN Before the House Comm. on Labor, Industrial and Rehabilitative Services (Feb. 28, 1989). These considerations provide a rational basis for the exclusion from permanent impairment awards of soft-tissue spinal injuries which do not result in loss of use of the upper or lower extremities. We conclude, therefore, that RSA 281-A:32, IX is constitutional under part I, articles 2 and 12 of the New Hampshire Constitution.

The petitioner next contends that the department of labor erred, abused its discretion, and acted arbitrarily in denying his claim for permanent partial disability benefits. We find that the department did not abuse its discretion or act arbitrarily. In its decision, the department of labor questioned whether the petitioner had reached the medical endpoint necessary to a permanent impairment award, and also found that there is no scheduled permanent impairment award for soft-tissue injuries like the petitioner's:

> The evidence presented indicates a diagnosis of chronic lumbar strain, without evidence of disc herniation or bony pathology. While Dr. Hansen states that the claimant has reached a medical endpoint, he gives no reason for why he came to this conclusion.

> RSA 281-A:32(IX) reads in part, "Injury to spinal column or spinal cord shall not be construed to permit an award under this section as a result of soft tissue injury, . . ." The case at hand would seem to fall precisely within this exclusion.

> Based upon the question of whether a muscle strain is permanent in nature, and the fact that no injury beyond a soft tissue strain has been diagnosed, it is determined that the claimant has failed to prove entitlement to any award under RSA 281-A:32.

■ "Our task is not to determine whether we would have found differently than did the board, or to reweigh the evidence, but rather to determine whether the findings are suported by competent evidence in the record." *Appeal of Gamas,* 138 N.H. 487, 490, 642 A.2d 925, 927 (1994) (quotation omitted). The petitioner alleges only a soft-tissue injury. Because we have upheld the soft-tissue exclusion in RSA 281-A:32, IX, we need not review the record in its entirety. Based on the record before us, we find competent evidence to support the department of labor's decision. The petitioner is not entitled to attorney's fees.

*Affirmed.*

All concurred.